IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ANTHONY DALE SHAFFER, ) | Case No. 03-44299-ABF |
| AMY RENEE SHAFFER, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| ANTHONY D. SHAFFER, ) | Adversary No. 04-5068-ABF |
| ARTHUR SHAFFER, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| BC NATIONAL BANKS AND ) | |
| TYLER GREEN ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This is a Complaint for violation of the automatic stay, as well as for violation of section 301.640 of Missouri's Revised Statutes. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) over which the court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). This constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## ISSUES PRESENTED

Anthony Dale Shaffer ("Anthony") is one of the debtors in this Chapter 13 proceeding. Arthur Shaffer (referred to in the hearing as "Arthur") is his father. Together, they borrowed funds from BC National Banks (the Bank) to purchase a 1991 Ford Pickup for use in a farming operation. Later, Anthony Shaffer and Amy, also a debtor here, executed a loan with the Bank, secured by a 1994 Ford Explorer and a 1998 Ford Windstar. Subsequent to the filing of the Chapter 13 Petition, the Bank took action to collect the obligation from Arthur, collecting funds from him sufficient to pay off the original loan,

secured by the 1991 Ford Pickup. Defendant Tyler Green is the loan officer at the Bank who is responsible for the Shaffer loans. Two questions are presented:

(1) Did the bank violate the co-debtor stay by seizing funds in which Arthur Shaffer held an interest; and

(2) Upon payment of the loan secured by the 1991 Ford Pickup, was the bank obligated under Missouri law to return the title to such pickup to Arthur within 10 days.

## DECISION

The loan involved was not a consumer loan, so no violation of the automatic stay, technical or otherwise, occurred. Furthermore, the loan secured by the 1991 Ford Pickup contained a cross-collateralization provision, such that the bank was not obligated to return the title to Arthur Shaffer until all obligations had been paid in full. Therefore, no violation of Missouri law occured.

## FACTUAL BACKGROUND

On or about June 18, 2002, Arthur Shaffer and debtor Anthony Shaffer, as co-borrowers, borrowed $3,860.00 from the Bank. At the time, Anthony and Amy were working for a grocery store in Fort Scott, Kansas. Arthur, who is 64 years old, had done business with the Bank and its predecessors for some 45 years or more. The application form shows that the applicant was Anthony, and that Arthur was a joint applicant. Bank records show that the purpose of the loan was to purchase a farm truck, that the primary method of repayment was to be farm income, and that the loan was for commercial purposes. On the same date as the promissory note was executed by Arthur and Anthony, they executed a "Commercial Security Agreement" (the Agreement) in favor of the Bank. The Agreement provided that in addition to this obligation, the Agreement secured "all

obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, . . . whether now existing or hereafter arising, whether related or unrelated to the purpose of the note."[1] Thereafter, on or about March 26, 2003, debtors Anthony and Amy Shaffer borrowed $5,951.45 from the Bank, secured by a 1998 Ford Windstar Van and a 1994 Ford Explorer. On that date, the debtors executed a document entitled "Consumer Security Agreement" listing those two vehicles. On July 9, 2003, Anthony and Amy filed this Chapter 13 Petition. On October 30, 2003, the Bank moved for relief from the stay, based on lack of insurance as to all three vehicles. That motion was denied on December 3, 2003, and on December 5, 2003, this Court confirmed Anthony and Amy's Chapter 13 Plan. On or about February 10, 2004, the bank seized a total of $2,206.37 from an account held in the name of Arthur and his granddaughter. That sum was sufficient to pay in full the loan secured by the 1991 Ford Pickup. On April 14, 2004, Arthur demanded that the Bank's lien on the title to the pickup be released and sent to him. On April 19, 2004, the Bank complied.

## DISCUSSION

Section 1301 of the Bankruptcy Code provides in relevant part as follows:

**(a)** Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless --

    **(1)** such individual became liable on or secured such debt in the ordinary course of such individual's business; or

    **(2)** the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

---

[1]Tr. Ex. 8.

. . .

**(c)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that -

**(1)** as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;

**(2)** the plan filed by the debtor proposes not to pay such claim; or

**(3)** such creditor's interest would be irreparably harmed by continuation of such stay.[2]

Section 101(8) of the Bankruptcy Code defines "consumer debt" as a "debt incurred by an individual primarily for a personal, family, or household purpose."[3]

Arthur first contends that the action of the Bank violated the co-debtor stay when it seized the bank account he held with his granddaughter. The Bank contends that this provision is not applicable because its collection activities did not relate to a "consumer debt". I agree with the Bank. Arthur and Anthony contend that Anthony is the primary user of the pickup truck, that he does not have a business, and that he uses the truck to haul water for his cistern, and to get to and from work in bad weather. They contend that Arthur, who is a farmer, uses the truck only rarely. Nevertheless, the issue is to what purpose the debt was incurred. Loans obtained for a farming operation are not incurred primarily for a personal, family, or household purpose.[4] The Bank's records show that the debt was incurred for a commercial purpose, and that it was to be repaid from farm income. Arthur and Anthony signed a "Commercial Security Agreement" for this loan, as opposed to the

---

[2] 11 U.S.C. § 1301.

[3] 11 U.S.C. § 101(8).

[4] *In re Thompson,* 750 F.2d 628, 631 (8th Cir. 1984).

"Consumer Security Agreement" signed by Anthony and Amy on the loan secured by vehicles used for their personal use. And, in obtaining insurance for the 1991 Pickup, Arthur represented to the insurance carrier that the vehicle was used for farm purposes, and that he, not Anthony, was the primary driver. Proof of that insurance was made available to the Bank on a regular basis. Arthur candidly admitted that he made such representations to the insurance carrier in order to obtain coverage at a lower price than Anthony would have been charged, but the fact remains that this representation was consistent with the application and the security agreement, all of which were relied upon by the bank in determining that this was a commercial loan. I find that the debt involved was not a consumer debt and that, therefore, Arthur was not entitled to the benefit of the co-debtor stay. While not necessary to my decision, I further find that, as one of the title holders on the 1991 pickup, Arthur did receive consideration for the claim held by the bank, and that the Bank would have been entitled to relief from the automatic stay.

As announced in open court, I further find in favor of the Bank as to the alleged violation of section 301.640 of Missouri's Revised Statutes. That statute provides in relevant part that "[u]pon the satisfaction of any lien or an encumbrance of a motor vehicle or trailer, the lienholder shall, within 10 business days release the lien or encumbrance on the certificate or separate document, and mail or deliver the certificate or a separate document to the owner or any person who delivers to the lienholder an authorization from the owner to receive this certification or such documentation."[5] That statute further provides for damages based upon the time the lienholder is in noncompliance, up to a maximum of

---

[5] Rev. Stat. Ann. § 301.640 (2003).

$500.00 for each lien.[6] Here, however, the security agreement signed by both Arthur and Anthony provides that the 1991 Ford Pickup secured all obligations of either of them to BC, whether then existing or thereafter arising. I find, therefore, that the Bank was not obligated to release the lien on the 1991 Pickup truck until all obligations due it from either Arthur or Anthony were satisfied. Accordingly, judgment should be entered in favor of the Bank as to those allegations as well.

An Order in accordance with the Memorandum Opinion will be entered this date.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: September 21, 2004.

Copies electronically mailed to:
Richard Fink
Jason Ballard
Christine Schlomann

---

[6] Id.